## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STEVEN TENEYCK,                         )
                                        )
                    Plaintiff,          )
                                        )    **CIVIL ACTION**
v.                                      )
                                        )    **No. 11-1233-JWL**
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
                    Defendant.          )
_____ )


## MEMORANDUM AND ORDER


Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental

security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social

Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).

Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

**I.     Background**

Plaintiff applied for both DIB and SSI, alleging disability beginning August 14,

2008.  (R. 11, 135-41).[1]  Plaintiff's applications were denied initially and upon

_____

[1]The dates appearing in the first paragraph of the decision at issue appear to be
erroneous in certain respects, but neither party claims reversible error, and the record
confirms that August 14, 2008 is Plaintiff's alleged date of onset of disability.  (R. 135,

reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ). (R. 11, 56-57, 83-84). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Guy E. Taylor on April 12, 2010. (R. 11, 27). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 11, 27-55). On May 7, 2010, ALJ Taylor issued a decision finding that although Plaintiff is unable to perform his past relevant work as a registered nurse, he acquired work skills from his past work which are transferable to other work represented by occupations such as a nurse consultant telephone case manager. (R. 11-20). Consequently, he determined that Plaintiff is not disabled under the Act, and denied his applications. (R. 20-21).

Plaintiff requested Appeals Council review of the ALJ's decision, and submitted a Representative's Brief explaining his disagreement with the decision. (R. 7, 214-15). The Appeals Council issued an "Order of Appeals Council" making the Representative Brief a part of the administrative record, but found no reason under Social Security Administration rules to review the ALJ's decision. (R. 1-6). Therefore, it denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner of Social Security. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff timely filed this case, seeking judicial review of the decision. (Doc. 1).

## II.     Legal Standard

139).

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in his RFC assessment and in his determination regarding the credibility of Plaintiff's allegations of symptoms resulting from his impairments.  The Commissioner argues that both the credibility determination and the RFC assessment were proper.  The court finds no error as alleged by Plaintiff in the ALJ's decision.  Because a proper credibility determination is a necessary part of a proper RFC assessment, the court begins with consideration of the propriety of the ALJ's credibility determination.

**III.   Credibility**

Plaintiff alleges the ALJ erred in his credibility determination because he did not consider the factors relevant to evaluating credibility as presented in Social Security Ruling (SSR) 96-7p and in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  (Pl. Br. 11-12) (purportedly quoting Luna at 161).[2]  He argues that the ALJ summarized the medical evidence but did not discuss how the medical evidence relates to Plaintiff's credibility; that the sporadic performance of daily activities does not establish, without more evidence, that a person is able to engage in substantial gainful activity; and that the ALJ did not take into consideration Plaintiff's work history.  (Pl. Br. 12, 13).  The Commissioner argues that the ALJ applied the guidelines for evaluating credibility contained in 20 C.F.R. §§ 404.1529 and 416.929, SSR 96-4p, and SSR 96-7p, and that those guidelines are consistent with Luna.  (Comm'r Br. 4).  The Commissioner summarized the legal standard applicable to a credibility determination, and noted that so long as the ALJ sets forth the evidence he relies upon in his credibility evaluation he need

---

[2]In his brief, Plaintiff quotes the 3-part framework used in the Tenth Circuit for evaluating credibility, and cites to Luna, 834 F.2d at 161 as the source of his quotation. (Pl. Br. 11-12).  Although the decision in Luna is the source of the 3-part framework applied in the Tenth Circuit, the precise language quoted in Plaintiff's brief does not appear in the Luna decision.  That language first appeared in an unpublished opinion--Hubbard v. Sullivan, No. 90-7081, 1991 WL 172661, *2 (10th Cir. Sept. 5, 1991) (citing Luna, 834 F.2d at 163-64).  The language appeared in a published opinion in 1992. Musgrave v. Sullivan, 966 F.2d 1371, 1376 (10th Cir. 1992) (citing Luna, at 163-64).  It has appeared in 27 opinions by the Tenth Circuit, most recently in Wilson, 602 F.3d at 1144 (quoting Branum v. Barnhart, 385 F.3d 1268, 1273 (10th Cir. 2004) (citing Luna, at 161)).  In relating the Tenth Circuit's 3-part framework, this court quotes the same language from the Tenth Circuit's opinion in Thompson, 987 F.2d at 1488 (quoting Musgrave, 966 F.2d at 1376 (citing Luna, at 163-64)).  E.g., Moser v. Astrue, Civ. A. No. 09-2241-JWL, 2010 WL 3718541, *3 (D. Kan. Sept. 14, 2010).

not address every factor listed in SSR 96-7p and 20 C.F.R. §§ 404.1529 and 416.929.  Id.

at 4-6 (quoting Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000)).  The

Commissioner spent the next six pages of his brief noting the credibility factors relied

upon by the ALJ and the record evidence supporting the ALJ's findings, and argues that

the ALJ's credibility determination was proper and should be affirmed.  Id. at 6-13.

The parties agree on the standard for evaluating the credibility of a Social Security

claimant's allegations of symptoms resulting from his impairments.

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted) (specifically addressing

pain symptoms).

In evaluating symptoms, the court has recognized a non-exhaustive list of factors

which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and

7

> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at

1489.  The regulations suggest factors which overlap and expand upon those stated by the

court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors

precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of

medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has

taken to relieve symptoms; and other factors concerning limitations or restrictions

resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

   An ALJ's credibility determinations are generally treated as binding on review.

Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d

407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the

finder of fact" and will not be overturned when supported by substantial evidence.

Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the

ALJ's credibility determinations, the court will usually defer to the ALJ on matters

involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but

see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule").  "However,

'[f]indings as to credibility should be closely and affirmatively linked to substantial

evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144

(quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988); Hackett, 395 F.3d at

1173 (same).

Here, the ALJ set out the framework from 20 C.F.R. §§ 404.1529, 416.929, SSR 96-4p, and SSR 96-7p which he applied in evaluating the credibility of Plaintiff's allegations, and he specifically listed the seven regulatory factors enumerated in SSR 96-7p for evaluating credibility.  (R. 14-15).  The ALJ summarized Plaintiff's testimony and the medical records.  (R. 15-17).  In the course of two pages of the decision, the ALJ analyzed Plaintiff's allegations and explained his rationale for determining that Plaintiff's testimony is not credible.  Id. 17-18.  The court discerns eleven reasons given by the ALJ to find Plaintiff's allegations not credible.  (1) Plaintiff did not comply with his physician's advice that he diet and exercise.  (2) Post-operative evidence of full finger motion and the absence of numbness is inconsistent with Plaintiff's allegations regarding the severity of his carpal tunnel syndrome symptoms.  (3) Plaintiff's allegations regarding the severity of his Crohn's disease symptoms is inconsistent with the fact that Plaintiff worked as a nurse for years while he had Crohn's disease.  (4) Plaintiff's treatment notes do not reveal symptoms from Crohn's disease as severe as those alleged by Plaintiff.  (5) Plaintiff was terminated from his job as a result of his "error in judgment," not as a result of his impairments.  (6) Plaintiff has not been using his inhaler regularly for his chronic obstructive pulmonary disease.  (7) Plaintiff has skipped many medical appointments.  (R. 17).  (8) The results of Plaintiff's physical examinations are not consistent with Plaintiff's alleged physical limitations.  (9) Plaintiff does not allege any adverse side effects from medications.  (10) Plaintiff did not participate in physical therapy, counseling, or psychotherapy.  (11) Plaintiff's daily activities "are not

compatible with an individual who suffers from debilitating symptoms that would preclude all work." (R. 18).

Contrary to Plaintiff's assertion that the ALJ did not consider the credibility factors required by SSR 96-7p and by Luna, even a passing review of the ALJ's analysis reveals that he considered at least seven of the factors from SSR 96-7p or from Luna: (1) Plaintiff's daily activities; (2) type, dosage, effectiveness, and side effects of medications; (3) treatment received for the relief of symptoms; (4) the extensiveness of attempts to obtain relief; (5) frequency of medical contacts; (6) subjective measures of credibility that are peculiarly within the judgment of the ALJ; and (7) the consistency or compatibility of nonmedical testimony with objective medical evidence. As the Commissioner points out, "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of Kepler are satisfied." (Comm'r Br. 5) (quoting Qualls, 206 F.3d at 1372).

Citing Broadbent, 698 F.2d at 413, Plaintiff correctly argues that the sporadic performance of daily activities does "not establish, without more evidence, that a person is able to engage in substantial gainful activity." (Pl. Br. 12-13). However, as the list above demonstrates, the ALJ in this case relied upon substantially more evidence than Plaintiff's sporadic performance of daily activities to find that Plaintiff's allegations are not credible.

In his final credibility argument, Plaintiff asserts that the ALJ failed "to take into consideration Teneyck's work history when considering his credibility." (PL. Br. 13).

10

Plaintiff acknowledges that the ALJ stated he had "a steady work history with above average wages," but argues that the ALJ failed "to indicate how this was factored into his credibility analysis." Id. (quoting (R. 18)).  The ALJ's statement regarding Plaintiff's "steady work history with above average wages" appears in the middle of the ALJ's credibility analysis, and in context, it is clear that while the ALJ was recognizing this as a credibility factor in Plaintiff's favor, he considered the many other negative factors to outweigh this factor, and found Plaintiff's allegations not credible.   Plaintiff has shown no error in the ALJ's credibility determination.

## IV.   RFC Assessment

Plaintiff claims error in the RFC assessment, arguing that the ALJ arbitrarily determined RFC and failed to provide the narrative discussion required by SSR 96-8p to explain how the medical evidence supports his RFC conclusions.  Specifically, Plaintiff argues that the ALJ discounted the opinion of a state agency single decision maker which was later "affirmed as written" by a state agency medical consultant, and that the ALJ improperly discounted the opinion of one of Plaintiff's treating physicians, Dr. Magee, without attempting to recontact the physician.  (Pl. Br. 7-9).  Based upon the facts that the ALJ discounted the medical opinions both of the state agency consultant and of Dr. Magee, and did not recontact Dr. Magee or seek a consultative examination, Plaintiff concludes that there is no record evidence to support the ALJ's finding that Plaintiff is able to perform sedentary work, and that the ALJ failed to provide a narrative discussion

explaining how the evidence supports the finding that Plaintiff can perform sedentary work.  Id. at 10-11.

The Commissioner argues that the ALJ's RFC assessment was proper.  First, he argues that the ALJ properly discounted both the opinion of the state agency medical consultant and the opinion of Dr. Magee.  (Comm'r Br. 14-15).  Then, he argues that an ALJ need not provide "a pinpoint citation to medical evidence in the record for each RFC finding," but that a narrative discussion need only "describe how the evidence supports the RFC conclusion, and cite specific medical facts and nonmedical evidence supporting the RFC assessment."  Id. at 15 (citing, Castillo v. Astrue, No. 10-1052-JWL, 2011 WL 13627, at *10-11 (D. Kan. Jan 4, 2011); and Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, at *13 (D. Kan. Apr. 4, 2011)).  Finally, the Commissioner argues that neither an RFC assessment nor a finding of "disability" or "non-disability" is a medical issue which must be dictated by a particular medical fact or opinion in the administrative record, but that they are administrative findings which must be made by the Commissioner, and in cases such as this, they have been delegated to the ALJ and left standing by the Appeals Council as the final decision of the Commissioner.  (Comm'r Br. 16).  He argues that the ALJ considered all of the record evidence before making his RFC assessment, and the assessment should be affirmed.  Id.

The court agrees with the conclusion of the Commissioner, but applies a slightly different reasoning to reach that conclusion.  First, Plaintiff recognized that the opinion of the SDM was affirmed as written by a state agency medical consultant, and thereby

became a medical opinion which was accorded "little weight" by the ALJ.  (Pl. Br. 9-10).

Plaintiff does not allege error in this determination, and the court's review reveals none.

Plaintiff's brief can be read, however, to assert error in the ALJ's determination to accord "little weight" to Dr. Magee's opinion, because the ALJ improperly speculated that Dr. Magee based his opinion merely on Plaintiff's subjective complaints, and because the ALJ did not recontact Dr. Magee for clarification.  The court finds no error in the ALJ's evaluation of Dr. Magee's opinion.

As Plaintiff argues, Dr. Magee completed a "Medical statement regarding chronic obstructive pulmonary disease for Social Security disability claim where smoking is issue."  (R. 541-43).  In that form, Dr. Magee indicated that Plaintiff had "Diagnostic criteria, associated conditions, and indicia of impairment" including chronic bronchitis, asthma, dyspnea (shortness of breath) on exertion, chronic cough, wheezing, and sputum production.  (R. 541).  He indicated Plaintiff has a significant smoking history of three-fourths of a pack a day for twenty-four years, but that he is no longer smoking.  Id.  Interestingly, Dr. Magee also opined that Plaintiff can reduce both his current disability and his future disability if he stops smoking.  Id.  He noted that supplemental oxygen has not been prescribed for Plaintiff, and he also opined regarding limitations in certain of Plaintiff's capabilities.  (R. 542).  Dr. Magee opined that Plaintiff can stand for thirty minutes at a time, sit for two hours at a time, work only four hours a day, occasionally lift twenty pounds, frequently lift ten pounds, and cannot tolerate dust, smoke, and fumes.  Id.

With regard to the limitations asserted, Dr. Magee provided a handwritten notation that, "I consider myself a poor judge of these." Id.

> As Plaintiff acknowledges, the ALJ gave "little weight" to Dr. Magee's opinion:
>
> because it is [(1)] conclusory and not supported by the signs and findings in [(2)] the physical status exams and [(3)] diagnostic tests previously cited, [(4)] the claimant's statements regarding his daily activities and the [(5)] claimant's history of treatment.  Further, [(6)] Dr. Magee stated he was a poor judge of claimant's limitations which indicated Dr. Magee has some misgivings about his ability to accurately assess the claimant's physical limitations.  The [(7)] opinion of Dr. Magee was based upon the subjective complaints of the claimant and not supported by the objective medical evidence of record.

(R. 19) (numbering added).  As the numbering added to the quotation above suggests, the court discerns seven reasons given by the ALJ to discount Dr. Magee's opinion.

Plaintiff acknowledges that Dr. Magee stated he considered himself a poor judge of Plaintiff's limitations, but he argues that the ALJ's weighing of Dr. Magee's opinion is erroneous because the ALJ improperly speculated that Dr. Magee merely based his opinion on Plaintiff's subjective allegations.  (Pl. Br. 8) (citing Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004)).  As Plaintiff suggests, the Langley court found it was error to reject the treating physician's report based upon speculation that "the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.'" Langley, 373 F.3d at 1121 (quoting the ALJ's decision).  The court noted that the "ALJ had no legal or evidentiary basis for either of these findings." Id.

Different than in Langley, the ALJ here did not even imply that Dr. Magee's opinion was merely an act of courtesy to Plaintiff.  Moreover, the record here provides

14

some evidentiary basis to find that it was based on the subjective complaints of Plaintiff. As the ALJ noted, Dr. Magee's report consisted merely of conclusory opinions, without citation to medical signs or findings suggesting those conclusions, and without support in the treatment records. Moreover, by stating both that Plaintiff had stopped smoking and that Plaintiff could reduce disability by stopping smoking, Dr. Magee's report can be understood to suggest that Plaintiff told the physician he was not smoking, but the physician felt there was indication that further improvement was possible if Plaintiff stopped all smoking. Finally, the fact that Dr. Magee specifically stated that he considered himself a poor judge of Plaintiff's limitations, but nonetheless stated limitations in all areas addressed in the form, suggests that the physician did not have a personal or professional reference or basis from which to deduce limitations, and might be viewed (as the ALJ did) to indicate that the physician looked to Plaintiff's subjective complaints to supply the requested information. Although Dr. Magee did not state that he based his limitations of Plaintiff's subjective complaints, there is an evidentiary basis from which the ALJ might reach that conclusion. The court finds no error in the ALJ's statement that Dr. Magee's opinion "was based upon the subjective complaints of the claimant" and recognizes that the ALJ provided six other reasons to discount the opinion which Plaintiff does not allege are erroneous. (R. 19).

Plaintiff suggests that even if the ALJ were correct to discount Dr. Magee's opinion because it was based on subjective complaints, he should have recontacted Dr. Magee for clarification of that opinion. (Pl. Br. 8) (citing 20 C.F.R. § 416.912(e)(1).

15

However, Plaintiff's argument misses the point of the clarification which might have been sought.  The regulation cited by Plaintiff states that clarification may be sought "by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source."  20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).  Plaintiff ignores that Dr. Magee's treatment notes from August 8, 2008 through January 13, 2010 were already a part of the administrative record, and he points to no reason to believe additional records were available.  (R. 282-333, 385-99, 460-90, 517-30).  Moreover, and perhaps most importantly, Plaintiff acknowledges that Dr. Magee considered himself a poor judge in the area of functional limitations.  (Pl. Br. 8) (citing (R. 542)).  He does not explain how a request for new report or for a more detailed report from Dr. Magee would allow Dr. Magee to become better able to judge or to provide better information regarding functional limitations.  The court finds no error in the ALJ's evaluation of the medical opinions.

The court's determination that the ALJ did not err in according "little weight" to the opinion of the state agency medical consultant or to Dr. Magee's opinion, confirms Plaintiff's assertion that "the ALJ did not give substantial weight in any area to any of the [medical] opinions contained in the record."  (Pl. Br. 10).  Plaintiff then concludes that there is no record evidence to support the ALJ's finding that Plaintiff is able to perform sedentary work, and that, therefore, the ALJ failed to provide a narrative discussion explaining how the evidence supports the finding that Plaintiff can perform sedentary

work.  Id. at 10-11.  Plaintiff's argument misunderstands both the standard applicable to RFC assessment and the burden of proof in a Social Security Disability determination.

As the Commissioner argues, this court clarified over a year ago that the narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed.  Castillo, 2011 WL 13627, at *11.  "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment."  Id.  See also, Thongleuth, 2011 WL 1303374, at *13.  There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical opinions in the record.

The determination of RFC is an administrative assessment, based on all the evidence of how plaintiff's impairments and related symptoms affect his ability to perform work related activities.  SSR 96-5p, West's Soc. Sec. Reporting Serv., 126 (Supp. 2011); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2011).  Because this assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a).  In addition, the final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

SSR 96-8p, to which Plaintiff appeals in his argument, requires that "[t]he RFC

assessment must be based on all of the relevant evidence in the case record," and it

provides a list of eleven examples of such relevant evidence, only one of which is

specifically a medical opinion ("Medical source statements"), and six of which are

evidence <u>other than</u> medical evidence.  SSR 96-8p, West's Soc. Sec. Reporting Serv., 147

(Supp. 2011).  Consequently, even though all of the medical opinions in the record have

been discounted, that fact does not mean, as Plaintiff alleges, that there is insufficient

record evidence upon which to base an RFC finding.  Moreover, there is no need to seek

clarification from Dr. Magee in order to "cure" this perceived insufficiency.  In this case,

the narrative discussion required by SSR 96-8p is the ALJ's entire discussion of his RFC

assessment.  (R. 14-19).

The crux of Plaintiff's argument is his concern with the summary paragraph of the

ALJ's RFC assessment:

> After considering the evidence of record, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be
> expected to produce some of the alleged symptoms, but that the claimant's
> statements concerning the intensity, persistence and limiting effects of these
> symptoms are not entirely credible.  The Administrative Law Judge finds no
> medically determinable or otherwise credible reason why the claimant
> cannot perform the full range of sedentary work, subject to the
> nonexertional limitations previously cited.

(R. 19).

Plaintiff quoted this summary and argued that the ALJ's statement that there was

no reason Plaintiff could not perform sedentary work does not meet the regulatory

18

requirement that the ALJ explain how the evidence supports his finding that Plaintiff is affirmatively able to perform sedentary work.  As a preliminary matter, Plaintiff ignores the ALJ's finding that Plaintiff cannot perform the <u>full range</u> of sedentary work because he has non-exertional limitations to frequent handling, occasional climbing and balancing; and from weather changes and concentrated exposure to fumes, dust, and odors.  (R. 14).

Most importantly, Plaintiff ignores that it is Plaintiff's burden to prove what his <u>limitations</u> are, not the Commissioner's burden to prove what Plaintiff's <u>capabilities</u> are. "It is beyond dispute that the burden to prove disability in a social security case is on the claimant."  <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997).  RFC is assessed between step three and step four of the sequential evaluation process, where the burden of proof is unquestionably on Plaintiff.  Only at step five does it become the Commissioner's burden to prove that jobs exist in the economy which are within the RFC limitations previously proven by Plaintiff.  <u>Blea</u>, 466 F.3d at 907; <u>Dikeman</u>, 245 F.3d at 1184; <u>Haddock</u>, 196 F.3d at 1088; <u>Williams</u>, 844 F.2d at 751 n.2; <u>see also</u>, 20 C.F.R. §§ 404.1520(e & g), 416.920(e & g) (<u>as amended in</u>:  Clarification of Rules Involving Residual Functional Capacity Assessments, 68 Fed. Reg. 51,153, 51,154-55, 51,156, 51,161-62, 51,164-65 (Aug. 26, 2003)).

A situation similar to that presented here was considered by the Tenth Circuit in 2004.  <u>Howard v. Barnhart</u>, 379 F.3d 945, 948-49 (10th Cir. 2004).  In <u>Howard</u>, the claimant argued there was no affirmative record evidence that she could perform the work

assessed by the ALJ, and she contended that the ALJ had "relied on an absence of evidence to reach his decision."  Id. at 948.  The Howard court explained, "We disagree with claimant's implicit argument that the agency, not the claimant, has the burden to provide evidence of claimant's functional limitations.  As a recent Social Security final rule makes clear, the agency's burden at step five does not include the burden to provide medical evidence in support of an RFC assessment, unless the ALJ's duty to further develop the record is triggered.  Id. (citing 68 Fed. Reg. 51,153, 51,155; and Hawkins, 113 F.3d 1162).  As the court's quotation from the record in this case establishes, the ALJ here acknowledged that Plaintiff met his burden to prove he could not perform work at the light exertional level or greater, but Plaintiff did not meet his burden to prove that he was more limited than the range of sedentary work assessed by the ALJ.

Plaintiff's brief might also be read, however, to assert that the ALJ erred in failing to properly develop the record in this case.  To be sure, a social security disability hearing is a nonadversarial proceeding, and the ALJ is "responsible in every case 'to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.' "  Hawkins, 113 F.3d at 1164 (quoting Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1993)).  Generally, this means that the "ALJ has the duty to ... obtain [ ] pertinent, available medical records which come to his attention during the course of the hearing."  Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996).  "The duty is one of inquiry, ensuring that the ALJ is informed about facts

relevant to his decision and learns the claimant's own version of those facts." <u>Henrie</u>, 13 F.3d at 361 (quotations and brackets omitted).

Beyond his assertion that the ALJ did not recontact Dr. Magee and did not cite specific medical evidence supporting the finding that Plaintiff can perform a limited range of sedentary work, Plaintiff does not suggest what more the ALJ should have done and does not point to records or evidence which were not secured.  As discussed above, citation to medical evidence of each limitation is not required in an RFC assessment, and it would have been futile in these circumstances to recontact Dr. Magee with regard to Plaintiff's functional limitations.

Plaintiff cites to an unpublished decision by the Tenth Circuit in support of his argument that an ALJ is not in a position to make an RFC assessment without [medical] evidence to support his findings.  (Pl. Br. 10) (citing <u>Fleetwood v. Barnhart</u>, 211 F. App'x 736, 740 (10th Cir. 2007)).  There is a basis to understand that <u>Fleetwood</u> requires medical evidence which suggests specific RFC limitations.  <u>Fleetwood</u>, 211 F. App'x at 740 ("To the extent there is very little medical evidence directly addressing Ms. Fleetwood's RFC, the ALJ made unsupported findings concerning her functional abilities.").  However, the court does not read <u>Fleetwood</u> so broadly.

The <u>Fleetwood</u> court found that the record evidence was clearly insufficient to make an RFC assessment.  <u>Id.</u> at 741 ("the need for additional evidence is so clearly established in this record that the ALJ was obliged to obtain more evidence").  The <u>Fleetwood</u> court noted that the ALJ's assessment was "conclusory and unsupported with

21

reasoning," and that the ALJ did not consider record evidence showing breathing

impairments, repeated hospitalizations, a need for albuterol treatments every four to six

hours, that plaintiff frequently called in sick when she was working, and that she was laid

off from her most recent job because of her absences.  Fleetwood, 211 F. App'x at 741.

Here, the record (including 331 pages of medical evidence from Sept. 27, 2004

through Mar. 25, 2010) was adequate for the ALJ to reach a decision, and as the court

found above, the ALJ provided appropriate rationale for his decision.  Finally, Plaintiff

does not point to any evidence which was not considered by the ALJ.  To the contrary,

the ALJ here acknowledged that Plaintiff has chronic obstructive pulmonary disease, but

noted that the evidence showed he was not using his inhaler on a regular basis and that

Plaintiff acknowledged he had not used a nebulizer in several months.  The ALJ noted

that Plaintiff was terminated from his last job because of "an error in judgment," and not

because of any physical impairments.  Here the evidence was not so deficient and the

ALJ's assessment was not so conclusory or unsupported as that in Fleetwood.  Moreover,

the Howard opinion cited above is binding precedent which precludes this court from

interpreting Fleetwood to require that the Commissioner must prove Plaintiff has the RFC

to perform work at a particular exertional level where Plaintiff has failed to prove that his

RFC precludes the performance of such work.

The court has considered each of Plaintiff's allegations of error, and finds no basis

therein to reverse the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 25th  day of May 2012, at Kansas City, Kansas.


s:/ John W. Lungstrum        
**John W. Lungstrum**
**United States District Judge**